IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DIANE M. RIVAS,                                    CV 07-6029-MA

            Plaintiff,                          OPINION AND ORDER

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,


            Defendant.


      JAMES KOCHER
      Lane County Legal Aid and Advocacy Center
      376 E. 11th Avenue
      Eugene, Oregon  97401-3246

            Attorney for Plaintiff

      KARIN J. IMMERGUT
      United States Attorney
      BRITANNIA I. HOBBS
      Assistance United States Attorney
      1000 S.W. Third Avenue, Suite 600
      Portland, OR  97204-2902

DAVID F. MORADO
Regional Chief Counsel
DAVID M. BLUME
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075

     Attorneys for Defendant

MARSH, Judge:

     Plaintiff, Diane M. Rivas (Rivas), brings this action for judicial review of a final decision of the Commissioner of Social Security to discontinue Rivas' Supplemental Security Income (SSI) benefits, which were originally awarded March 10, 1997 under Title XVI of the Social Security Act (the Act).  The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons that follow, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

## BACKGROUND

     The Commissioner granted Rivas' application for SSI benefits in the first instance upon finding that she suffered from severe epilepsy and affective/mood disorder.  However, after a periodic review of Rivas' continuing entitlement to benefits the Commissioner determined that as of May 1, 2004 Rivas had enjoyed medical improvement related to her ability to work such that she was no longer disabled within the meaning of the Act.  In November 2004 this decision was affirmed upon reconsideration.

2 - OPINION AND ORDER

In February 2005 Rivas requested a hearing before an
administrative law judge (ALJ), and in May 2006 the ALJ held a
hearing at which Rivas, who was represented by an attorney,
testified.  On July 28, 2006 the ALJ issued a decision finding
Rivas not disabled as of May 1, 2004.  On December 8, 2006 the
Appeals Council denied Rivas' request for review of that
decision, making the ALJ's July 28, 2006 decision the
Commissioner's final decision, of which Rivas seeks judicial
review.

On appeal to this Court Rivas alleges that the ALJ erred by:
(1) failing to consider medical evidence from 1997, when Rivas
was first adjudicated disabled; (2) failing to consider Rivas'
condition at the time of the hearing; (3) failing to consider
that Rivas was 50 years old at the time of the ALJ's decision;
(4) failing to consider how the loss of SSI benefits would effect
Rivas' psychological condition; (5) improperly crediting the 2004
psychological report of Dr. McConachie; (6) improperly construing
a statement Rivas made about not being suicidal to hospital staff
in March 2000; and, (7) failing to order a psychological
evaluation to assess the severity and expected duration of Rivas'
depression.  I address these arguments, below, in the order they
arise under the Commissioner's eight-step continuing disability
analysis.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## CONTINUING DISABILITY STANDARDS

After the Commissioner determines that a person is disabled he must evaluate the claimant's impairments "from time to time to determine if [the claimant is] still eligible for disability cash benefits." 20 C.F.R. § 404.1589. This evaluation is called a "continuing disability review" and the claimant is notified that

the review could result in the termination of benefits. *Id*.   In
evaluating a disabled claimant's continuing eligibility for
benefits the Commissioner must consider whether "there has been
any medical improvement in [the claimant's] impairment(s) and, if
so, whether this medical improvement is related to [the
claimant's] ability to work."  20 C.F.R. § 404.1594.   In
addition, the Commissioner must establish that the claimant is
currently able to engage in substantial gainful activity.   *Id*.
Alternatively, even if a claimant has not enjoyed medical
improvement, if she is "a beneficiary of advances in medical or
vocational therapy or technology" and is therefore now able to
engage in substantial gainful activity, the Commissioner may
terminate her benefits.   42 U.S.C. § 1382c(a)(4)(ii).

    Although the claimant is entitled to a presumption of
continuing disability, the ultimate burden of persuasion remains
on her shoulders. *Patti v. Schweiker*, 669 F.2d 582, 586-87 (9th
Cir. 1982); *see also* Fed .R. Evid. 301 ("a presumption imposes on
the party against whom it is directed the burden of going forward
with evidence to rebut or meet the presumption").   In order to
meet her burden of persuasion, the claimant must demonstrate an
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment...which has lasted or can be expected to last for a

continuous period of not less than 12 months...".  42 U.S.C. §
423(d)(1)(A); *see also* 20 C.F.R. § 404.1509.

**B.    Eight-Step Sequential Evaluation**

The Commissioner has established an eight-step sequential
evaluation for determining whether a person's disability has
ended.  *See* 20 C.F.R. § 404.1594(f).

At step one the Commissioner inquires whether a claimant is
engaging in substantial gainful activity.  *See* 20 C.F.R. §
404.1594(f)(1).  If the claimant is not engaging in substantial
gainful activity, the Commissioner moves to step two.

At step two the Commissioner inquires whether the claimant
has an impairment or combination of impairments that meet or
equal the severity of an impairment set forth in the listings
found at 20 C.F.R. pt. 404, subpt. P, app. 1.  *See* 20 C.F.R. §
404.1594(f)(2).  If the claimant's condition meets or equals a
listing her disability benefits will continue.  If not, the
Commissioner moves to step three.

At step three the Commissioner inquires whether the claimant
has enjoyed medical improvement in her condition.  *See* 20 C.F.R.
§ 404.1594(f)(3).  Medical improvement is any decrease in the
severity of the impairment that was present at the time the
individual was disabled or continued to be disabled.  *See* 20
C.F.R. § 404.1594(b)(1).  A determination that there has been a

6 - OPINION AND ORDER

decrease in medical severity must be based on changes indicative of improvement in relation to symptoms, signs, or laboratory findings associated with the impairment. *Id*. If the Commissioner finds the claimant has had medical improvement he moves to step four. If the Commissioner finds the claimant has not had medical improvement he moves to step five.

At step four, the Commissioner inquires whether the medical improvement is related to the claimant's ability to perform work. Medical improvement is related to the ability to work if there has been a decrease in the severity of the impairment present at the time of the most recent medical decision and an increase in the individual's functional capacity to perform basic work activities. *See* 20 C.F.R. §§ 404.1594(b)(3), (f)(4).

At step five the Commissioner considers whether, even in the absence of medical improvement or an increase in the claimant's ability to work, any of the exceptions to medical improvement apply. *See* 20 C.F.R. § 404.1594(f)(5). If an exception applies, a claimant's disability can be terminated even though medical improvement has not occurred. Exceptions include: (1) a prior disability determination was fraudulently obtained; (2) the claimant does not cooperate with the Commissioner; (3) the Commissioner is unable to locate the claimant; (4) the claimant fails to follow prescribed treatment expected to restore her

7 - OPINION AND ORDER

ability to engage in substantial gainful activity; or (5) the claimant has benefitted from advances in medical or vocational therapy, or technology, that have increased her ability to do basic work activities. *See* 20 C.F.R. §§ 404.1594(d) & (e). If one of the first four exceptions applies, the claimant's benefits will be terminated. If the fifth exception applies, the Commissioner moves to step six.

At step six the Commissioner considers whether the claimant's impairment, or combination of impairments, are severe. *See* 20 C.F.R. § 404.1594(f)(6). If the Commissioner finds that a claimant's impairment(s) do not significantly limit her ability to do basic work activities her benefits will be terminated. If the Commissioner finds the claimant does have a severe impairment or combination of impairments, he moves to step seven.

At step seven the Commissioner assesses whether a claimant can perform her past relevant work, either as it was performed in specific settings or as it is ordinarily performed in the national economy. *See* 20 C.F.R. § 404.1594(f)(7); *see also* 20 C.F.R. § 404.1520(e). If the Commissioner finds the claimant can perform her past relevant work, the claimant's benefits will be terminated. If not, the Commissioner moves to step eight.

At step eight the burden of production shifts to the Commissioner to prove that there is alternative work in the

8 - OPINION AND ORDER

national economy that the claimant can perform given her age,
education, work experience and residual functional capacity.  *See*
20 C.F.R. § 404.1594(f)(8).  If so, the claimant's benefits will
be terminated.  If not, the claimant's benefits will continue.

### DISCUSSION

Rivas objects to findings made by the ALJ at steps three and
six of the eight-step sequential evaluation.  Accordingly, I will
review only the ALJ's findings at these steps, and assume, for
purposes of this review that all unrebutted findings were based
on substantial evidence in the record.

## I.    Step Three

At step three the ALJ found Rivas had enjoyed medical
improvement as of May 1, 2004.  Rivas alleges multiple errors
with this finding.  First, Rivas contends the ALJ failed to fully
and fairly develop the record because she did not include Rivas'
medical records from 1997, when Rivas was first adjudicated
disabled.  This was reversible error, according to Rivas, because
if the 1997 "comparison point decision" records had been included
they "would have shown that the 2004 psychological report by Dr.
McConachie...was dramatically inconsistent with the psychological
reports both before and after that date."

Second, Rivas contends the ALJ committed reversible error by
failing to consider her condition at the time of the hearing in

9 - OPINION AND ORDER

May 2006.  Rivas contends her condition at the time of the
hearing was "materially different" from her condition two years
earlier, at the time of the cessation decision.  According to
Rivas, at the time of the hearing she suffered from seizure
disorder and depression again.

Third, Rivas alleges the ALJ erred by failing to order a
"current psychological evaluation, instead of relying on the 2004
psychological evaluation by Dr. McConochie."  Moreover, Rivas
argues the ALJ should not have given Dr. McConochie's opinion
controlling weight because it was riddled with errors, including
repeated references to "Kate" and incorrectly stating that Rivas
has three siblings.  Rivas alleges the ALJ also erred by failing
to consider "the reports from current treating sources in 2006
despite the fact they show [Rivas] continues to suffer from major
depression and seizure disorder."

I do not find any merit to these arguments.  When an
individual challenges an initial determination that her
disability has ceased, subsequent adjudicators, including the
ALJ, consider what that individual's condition was at the time of
the cessation determination, not her condition at the time of the
ALJ's review.  *See* Acquiescence Ruling (AR) 92-2(6), available at
1992 WL 425419; *Johnson v. Apfel*, 191 F.3d 770, 775-776 (7th Cir.
1999).  Furthermore, if an adjudicator finds that the cessation

10 - OPINION AND ORDER

determination was proper, the analysis must end.  *Id*.  If the evidence in any way suggests that the claimant may have become disabled again after his disability ceased, the adjudicator will suggest filing a new application for benefits.  *Id*.

In this case the ALJ properly reviewed the initial determination that Rivas had medical improvement as of May 1, 2004, by reviewing the evidence indicating Rivas' condition as of this date had medically improved.  The ALJ did not seek to develop the record beyond this date, such as by ordering consultative examinations contemporaneous with the ALJ hearing in May 2006, because Rivas' condition in 2006 was not relevant to deciding if she had medical improvement as of May 1, 2004.

Similarly, the ALJ did not need to do more than summarize the medical evidence from the 1997 disability determination, which she did.  The ALJ noted that in 1997 Rivas was adjudicated disabled based on evidence that her depression and personality disorders were severe enough to prevent her from sustaining adequate concentration during the course of a normal workweek. Without citing any authority to support her claim of error on this point Rivas simply argues that the 1997 medical evidence would have served to further undermine the 2004 psychological report by Dr. McConachie.  Like many of Rivas' other arguments, this claim is not based on legal error, but on inconvenience to

11 - OPINION AND ORDER

Rivas.  The ALJ found that all the medical evidence leading up to
the cessation determination suggested Rivas had enjoyed a
dramatic decrease in the medical severity of her impairments
previously found to be disabling.  The ALJ found Rivas had not
undergone any treatment for depression or anxiety disorder, and
that Rivas had no more than one seizure per month, and otherwise
her seizure disorder was well-controlled with medication.

The ALJ noted the findings of William McConochie, Ph.D.,
from an April 2004 psychological evaluation, that Rivas had
refused all medical interventions to treat her mental conditions,
and his opinion that Rivas no longer suffered from clinically
significant depression, anxiety, or memory deficits.  The ALJ
also noted Rivas' attempt to later downplay the unremarkable
findings of Dr. McConochie by telling a disability officer that
she had not been entirely forthcoming with Dr. McConochie because
she was afraid she would be psychiatrically hospitalized, as she
had been in Maryland in 2000.  Rivas also told the disability
officer that she has refused all medical interventions because
she was afraid of being judged an unfit parent and losing custody
of her daughter.

The ALJ reviewed the disability officer's reasons for
rejecting this explanation from Rivas, and for finding Rivas
generally less than fully credible.  Specifically, the disability

12 - OPINION AND ORDER

officer cited medical records from Rivas' prior psychiatric
hospitalization for depression in March 2000, at which time she
resisted all medical interventions and told the hospital staff,
"I am not depressed, I just said I wanted to die so I could get
some help from social services."  Moreover, the hearing officer
noted that Rivas was not deterred by fear of losing her daughter
when she voluntarily underwent two mental health evaluations in
order to obtain disability benefits in the first instance.  Nor
did she lose her daughter as a result.

Rivas' rebuttal to the rejection of her credibility on these
bases consists of claiming that when she made these statements
she really was depressed and suicidal but claimed not to be in
order to get out of the hospital.  This argument overlooks the
fact she would not have been placed on a psychiatric hold if she
had not voluntary reported to the authorities that she was not
well.  A well person does not report to the authorities that they
are unwell for no reason.  It follows that if Rivas was well, she
had a reason other than obtaining medical intervention, for
reporting to the authorities that she was unwell, such as
attempting to obtain social services for which she would not
otherwise qualify.  If she was unwell, one would not expect Rivas
to have rejected the medical interventions the authorities
offered and suffer no further deteriorations after her release

13 - OPINION AND ORDER

from the hospital prior to February 2006, which was the next time Rivas sought mental health treatment.  Whatever her true motives were in March 2000, it is beyond dispute that Rivas has a history of unreliable reporting regarding her mental state, and failure to follow prescribed treatment reasonably likely to improve the conditions from which she claims to suffer.

The ALJ noted the concerns Rivas raises about Dr. McConochie's report inaccurately referring to Rivas as "Kate", and incorrectly stating the number of sibling Rivas has, but found these mistakes harmless.  After reviewing the report myself I find this to be a reasonable conclusion.  In any event, Rivas argues that the more compelling reason to reject Dr. McConochie's opinion is that it conflicts with all the other evidence in the record.  I do not find any merit to this argument.  A finding of medical improvement will necessarily be based on evidence that the medical conditions upon which disability was originally granted have ameliorated.  Thus, the fact Rivas was diagnosed with severe depression and anxiety in 1997 does not undermine Dr. McConochie's April 2004 finding that she did not suffer from these impairments at that time.  To the contrary, the seven years that passed between the 1997 finding and Dr. McConochie's evaluation, during which Rivas' only mental health record is from the March 2000 hospitalization when she still did not accept

14 - OPINION AND ORDER

medication or treatment of any kind, serves to bolster Dr. McConochie's opinion that Rivas' mental health improved.

For the reasons already discussed, medical evidence post-dating the cessation date is not relevant to the determination whether the claimant experienced medical improvement prior to that date. Nevertheless, the ALJ did review medical evidence Rivas submitted showing she sought mental health treatment in February 2006 from Brian Jones, M.D., who prescribed Zoloft. The ALJ noted that Rivas presented to Dr. Jones at that time complaining of difficulty concentrating, lack of motivation, sleep disturbance, and thoughts of death. She also asked for a note "indicating that she would be able to keep her dog for mental health reasons." At a follow-up appointment two months later Rivas told Dr. Jones she was a "little bit improved" and she asked for an increase in the dosage of Zoloft. The ALJ also noted that Rivas had a medical marijuana card, and she reportedly smoked marijuana everyday.

In addition to a few chart notes from Dr. Jones, Rivas submitted an April 24, 2006 psychosocial assessment from Center for Family Development, where she sought mental health treatment after her 15-year-old daughter moved out of the house and began living with a teacher from high school. Rivas stated that her daughter was tired of Rivas' behavior, including her recent

15 - OPINION AND ORDER

attempt to cut herself with a knife.  Rivas also reported that a year earlier she tried to commit suicide by "hitting herself with rocks and trying to drown herself."  Rivas reported to the staff at the Center for Family Development that she had never received mental health treatment in Oregon, except for obtaining medical marijuana, which she said helped her cope with her anxiety. Rivas reported she was also taking a high dose of Dilantin. Based on these reports and a mental status examination showing some deficits, the Center assessed Rivas with major depressive disorder, anxiety disorder, and rule-out cannabis related disorder.

Rivas argues Dr. Jones opinion that she suffered from depression in February 2006 rebuts Dr. McConochie's opinion that Rivas did not suffer from depression in April 2004.  This argument lacks merit for the obvious reasons, and because the ALJ rejected Dr. Jones' opinion – a finding Rivas does not contest. The ALJ found that Dr. Jones based his diagnosis primarily on Rivas' unreliable subjective reporting.  The ALJ also rejected Rivas' reports of attempted suicide to the Center for Family Development because Rivas did not report these events to Dr. Jones when she saw him a few months earlier, but after the time of the alleged suicide attempt.

16 – OPINION AND ORDER

For all of these reasons, I find the ALJ reasonably concluded that Rivas had enjoyed medical improvement as of May 1, 2004, and I find substantial evidence to support this finding.

**II.  Step Six**

At step six, the ALJ found that as of May 1, 2004, Rivas' impairments were severe.  The ALJ assessed Rivas with the residual functional capacity (RFC) to perform work at all exertional levels, limited by the need to avoid hazards and to not work with the general public.  Rivas alleges the ALJ erred at this step by failing to take into consideration Rivas' age (50) at the time of the hearing, and her length of absence from the workforce in assessing her residual functional capacity.  Neither of these claims is grounded in legal authority.  As I discussed, above, the cessation date, not the hearing date, is the relevant date for considering all of the claimant's conditions, including her age.  The regulations do not require the ALJ to consider a claimant's length of absence from the workforce in assessing her RFC.  Similarly, the ALJ is not obligated to consider the effect losing disability benefits would have on a claimant's psychological condition, as Rivas contends.

17 - OPINION AND ORDER

## **CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 25_ day of June, 2008.


                     /s/  Malcolm F. Marsh
                     Malcolm F. Marsh
                     United States District Judge